**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RANDALL E. MANN, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.   3:13cv668-WHA |
| | ) | |
| JASON C. TOWNE, in his individual capacity, | ) | (wo) |
| CHRIS MCCRANE, in his individual capacity, | ) | |
| and CITY OF DADEVILLE, ALABAMA, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case is before the court on a Motion for Summary Judgment filed by the Defendants

on May 30, 2014 (Doc. #19), and a Response brief by the Defendants which the court has

construed as a supplement to the Motion for Summary Judgment (Doc. #24).   The Plaintiff filed a

Complaint in this case on September 18, 2013.   The Plaintiff filed an Amended Complaint on

June 27, 2014, with leave of the court.

The Plaintiff brings claims for unlawful and unreasonable search and seizure under 42

U.S.C. §1983 against Defendants Jason Towne ("Towne") and Chris McCrane ("McCrane")

(Count One), for violation of substantive due process (bodily integrity) under 42 U.S.C. §1983

against Towne and McCrane (Count Two), deprivation of civil rights (deliberate indifference)

under 42 U.S.C. §1983 against the City of Dadeville (Count Three), negligence against Towne and

McCrane (Count Four), and neglectfulness, unskillfulness, and carelessness against the City of

Dadeville (Count Five).

For the reasons to be discussed, the Motion for Summary Judgment and the supplement to

that motion are due to be GRANTED in part and DENIED in part.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if there is no genuine issue as to any material fact and   . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.   Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."   Fed. R. Civ. P. 56 (c)(1)(A),(B).   Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).   On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a).

## III.   FACTS

In May 2013, the Plaintiff, Randall Mann ("Mann"), and two other individuals were traveling in a white Ford Taurus owned by Mann's mother.   Mann was the driver.   According to the deposition testimony of Defendant Towne, a City of Dadeville police officer, the Tallapoosa County Sheriff's office dispatched as follows:

> that a white Ford Taurus, giving the tag number, was going to be driven by Randall Mann. Other occupants in the vehicle were David Kiztiah, and they were unsure on the third occupant. Was going to be traveling on Highway 280, and there were narcotics in the vehicle.

(Doc. #29-2 at p. 14:6-13).[1]   Defendant Chris McCrane ("McCrane"), also a City of Dadeville police officer, also received the dispatch and testified about it in his deposition as follows:

> There was supposed to have been an occupant in the area by the name of Terrence Kiztiah that had drugs in the car. It gave a vehicle description, white Ford Taurus traveling on U.S. 280.

(Doc. #29-3 at p. 20: 19-23).   McCrane stated that the call was on the 911 line and that all 911 calls are recorded.   (Doc. #29-3 at p. 21:15-21).

In response to a deposition question about McCrane getting a call from Towne, McCrane stated that they got a dispatch, Towne had been sitting on U.S. 280 looking for the car and he "recognized the passengers in the car."   (Doc. #29-3 at p. 20: 8-12).

Towne testified that he saw the Taurus in which Mann and the other two individuals were

---

[1]   The Deposition transcripts have been filed under seal; however, the parties have referred to and quoted testimony in their unsealed briefs. Therefore, the court has also referred to testimony from the depositions.

traveling.   Towne also observed that a passenger was not wearing a seatbelt. (Doc. #29-2 at p. 14:15-18).   He ran the license tag number and initiated a traffic stop.   McCrane pulled his vehicle directly behind Towne's vehicle at the stop.   Both police vehicles had recording devices.

Towne states in an affidavit that when he approached the driver's side of the vehicle he observed several beer bottles in the front passenger seat and back floorboard and he smelled alcohol. (Doc. #19-2 at p.2).   When he asked Mann if there were any narcotics in the vehicle, Mann responded that "there shouldn't be." (Doc. #19-2 at p.2).

Towne had Mann exit the vehicle and Towne conducted a pat-down search of Mann. He did not locate any weapons or contraband as a result of the pat-down.   Towne testified in his deposition that he told McCrane that he just did a "quick pat" and then asked McCrane to "take Mr. Mann" because they had other occupants in the car.   (Doc. #29-2 at p.17:11-17).   McCrane stated in his affidavit that he noticed that Mann had two pairs of shorts on, so he had him drop one pair, and then frisked Mann on the opposite side of Towne's vehicle. (Doc. #19-3 at p.2).   In his deposition, Mann stated that he was told to remove his hat, shirt, shorts, and underwear and did so. Mann testified that he was standing on the side of the road with no clothes on, but that no one searched him while he was naked.   (Doc. #30-1 at p.116:1-11).   In an affidavit, however, Mann states that he dropped his underwear and pulled them back to his waist and then McCrane placed a hand inside the underwear and searched inside the underwear.   (Doc. #29-4 at ¶5).

During the stop, recording devices in the dashboards of Towne and McCrane's vehicles were recording.   The video recordings do not reveal Mann removing his hat and shirt or underwear.   The recording does show Mann dropping a pair of white shorts, an officer patting and shaking gray shorts which Mann was still wearing, and Mann pulling his white shorts back on.

4

(Doc. #19-5 beginning at 3:09).

Other drug task force officers who are not defendants in the case were also present at the scene.

A firearm, drugs, a game camera, and other items were found during a search of the car and other occupants, and all three occupants of the car were arrested.

## IV. DISCUSSION

### Federal Claims

Mann brings federal Fourth Amendment claims for the stop of the vehicle he was driving, his detention, and searches of his person and the vehicle.

#### A.  Unlawful Seizure/Stop Claim

The Fourth Amendment prohibits "unreasonable searches and seizures...." U.S. Const. Amend. IV.   Generally, warrantless seizures are presumptively unreasonable. *United States v. Gordon*, 231 F.3d 750 (11th Cir. 2000).   But, a "*Terry* stop" is an exception to the warrant requirement.   *See Terry v. Ohio*, 392 U.S. 1 (1968).   Under *Terry* and its progeny, "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot."   *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).   To have a reasonable suspicion, "[t]he officer must be able to articulate more than an 'inchoate and unparticularized suspicion or 'hunch' of criminal activity.' " *Id.* (quoting *Terry*, 392 U.S. at 27).   Reasonable suspicion is "dependent upon the 'totality of the circumstances,' including both the content of the information and its reliability."   *United States v. Heard*, 367 F.3d 1275, 1278 (11th Cir. 2004).

The Defendants argue that Towne and McCrane are entitled to qualified immunity on Mann's unlawful stop claim.   Qualified immunity is a protection designed to allow government officials to avoid the expense and disruption of trial.   *Ansley v. Heinrich*, 925 F.2d 1339, 1345 (11th Cir.1991).   As a preliminary matter, the court must determine whether the public official was acting within the scope of his discretionary authority at the time the allegedly wrongful acts occurred.   *See Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1988).   Once it is established that a defendant was acting within his discretionary authority, the court must determine whether "[t]aken in a light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"   *Saucier v. Katz*, 533 U.S. 194, 201 (2001).   "[I]f a constitutional right would have been violated under the plaintiff's version of the facts," the court must then determine "whether the right was clearly established." *Wood v. Kesler*   323 F.3d 872, 878 (11th Cir. 2003).

   Requiring that a constitutional right be clearly established means that liability only attaches if "[t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."   *United States v. Lanier*, 520 U.S. 259, 270 (1997).   In other words, a defendant is entitled to "fair warning" that his conduct deprived his victim of a constitutional right. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

As noted above, a traffic stop is valid if it is justified by reasonable suspicion of criminal activity. *See Terry*, 392 U.S. at 27.   For purposes of the qualified immunity inquiry, the officers must have arguable reasonable suspicion. *Jackson v. Sauls*, 206 F.3d 1156, 1166 (11th Cir. 2000).

Mann responds to the supplemented Motion for Summary Judgment as to his stop claim by arguing that Mann and Towne were acting within their discretionary authority, but violated clearly

established Fourth Amendment law because there is at least a genuine issue of material fact as to whether the traffic stop was initiated based on a seat belt infraction, and that the anonymous tip given by dispatch was not reliable, and was uncorroborated.   In their Reply brief, the Defendants clarify that they do not contend that the stop was based on a seatbelt infraction, but solely on the dispatched tip.   Therefore, the court will only analyze the qualified immunity defense invoked by the Defendants as to the stop based on the dispatched tip.

In this case, the reasonable suspicion upon which the officers based their *Terry* stop arose from a tip by an unnamed female to the 911 line.   An anonymous tip can be part of the totality of the circumstances which give rise to reasonable suspicion. *See United States v. Lindsey*, 482 F.3d 1285, 1290-91 (11th Cir. 2007).   "The issue is whether the tip, as corroborated by independent police work, exhibited sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop."   *Id.* at 1291 (quoting *Alabama v. White*, 496 U.S. 325 (1990)).   To have reasonable suspicion based on an anonymous tip, the tip must be reliable "in its assertion of illegality, not just in its tendency to identify a determinate person." *Id.* (quoting *Florida v. J.L.*, 529 U.S. 266 (2000)).

The Supreme Court has addressed the reliability of anonymous tips in the context of *Terry* stops in three recent decisions.   In *White*, an anonymous caller reported to the police that a woman was carrying cocaine and would leave an apartment building at a specified time, get into a car with a particular description, and drive to a particular motel.   *Id.* at 332.   The Court stated that standing alone, the tip would not have been sufficient, but police observation showed that the informant had accurately predicted the woman's movements, which made it reasonable to think that the informant had inside information so as to credit the statement about cocaine. *Id.*   The

7

Court considered the facts to be a "close case." *Id.* at 332.

While in *White* the Court relied on the prediction, and verification of the predictive movement, in *Navarette v. California*, __U.S.__, 134 S.Ct. 1683 (2014),[2] the Court explained that the indicia of reliability, while different in that case, still supported the *Terry* stop where an anonymous caller said she had been run off the road by a particular vehicle with a specified license plate on a particular road, and the police confirmed the location of the truck, confirming that it was a contemporaneous report and the caller used the 911 system.   *Id.* at 1689.   In other words, predictive information can be considered, along with other factors, but is not required to provide a sufficient indicia of reliability.   As to the use of the 911 system, the Court noted that tips in 911 calls are not *per se* reliable, but because "a reasonable officer could think that a false tipster would think twice before using such a system," a caller's use of the 911 system is "one of the relevant circumstances that, taken together, justified the officer's reliance on the information reported in the 911 call."   *Id.* at 1690.

In *Florida v. J.L.*, 529 U.S. 266 (2000), the Court found that a stop was not based on reasonable suspicion.   In that case, an anonymous caller reported to the police that a young black male standing at a particular bus stop was wearing a plaid shirt and carrying a gun.   When the police arrived, they saw three black males at the bus stop, one of whom was wearing a plaid shirt. One of the officers told the man wearing the plaid shirt to put his hands up and frisked the man. The Court explained that the anonymous tip lacked the moderate indicia of reliability present in *White*, because there was no predictive information, and so the police were without means to test

---

[2]   *Navarette*, decided after the events in question in this case, helps to define the scope of a constitutional violation, but could not clearly establish the law at the time of the incident for purposes of qualified immunity.

the informant's knowledge or credibility.   The Court stated that "an accurate description of a subject's readily observable location and appearance . . . does not show that the tipster has knowledge of criminal activity."   *Id.* at 272.

In this case, the court does not have before it a recording of the call to the dispatcher or of the dispatch to the officers.   The court has only the Defendants' testimony as to the dispatch they received, which has not been disputed by Mann.   As set forth fully above, the Defendants have provided deposition testimony that Towne and McCrane received a dispatch that there was a 911 caller who identified a white 1999 Ford Taurus, with a given tag number, which "was going to be driven" by Randall Mann on Highway 280, with two passengers, including one named Kiztiah, and which the caller said contained narcotics.   Towne saw a car matching that description in the location indicated by the tipster and confirmed the tag number.   McCrane testified in his deposition that he and Towne heard the dispatch, Towne saw the vehicle identified, and Towne recognized the passengers in the car.

Just as the Court found in *White*, this court finds that the facts in this case are a "close case," but that the anonymous tip in this case provided sufficient indicia of reliability both through personal knowledge of information that would not be available to a mere observer and through corroboration of some details of the tip by the officers.   The caller knew the name of the driver of the car. *See United States v. Wade*, 551 F. App'x 546, 548 (11th Cir. 2014) (noting that corroboration of the anonymous tip came in part by identifying the suspect by name).   The caller knew two other people would be traveling with the driver, and knew the name of one of those occupants.   McCrane's deposition also indicates that the tipster said that a named occupant, Kitziah, had the narcotics with him.   McCrane also testified in his deposition that the occupants

were recognized by Towne before the stop.   (Doc. #29-3 at p. 20: 11-12).   This is corroboration

which did not exist in *White*, where the police did not verify the name of the woman about whom

the tip was made.   496 U.S. at 331.   And, the officers in this case verified the tag number of the

vehicle.   Finally, the caller in this case also used the 911 system, providing an indicia of

reliability. *Navarette*, 134 S.Ct. at 1690.

Mann has argued that there was no predictive information offered in the tip in this case.

While the caller did not offer a destination for the Taurus, the deposition testimony of Towne

regarding the tip arguably is more predictive than the tip in *J.L.*, because he indicated that the

dispatch was that the vehicle was "going to be traveling" on Highway 280.

The court concludes that, taken together, in a totality of the circumstances, the anonymous

tip, as corroborated, exhibited sufficient indicia of reliability to support reasonable suspicion for

the *Terry* stop in this case.   Even if there is a constitutional violation, however, the court

concludes that a reasonable officer would have concluded that he had arguable reasonable

suspicion of criminal activity to conduct a *Terry* stop under clearly established law.   "The

relevant, dispositive inquiry in determining whether a right is *clearly* established is whether it

would be *clear* to a reasonable [police officer] that his conduct was unlawful in the situation he

confronted." *Morris v. Town of Lexington Alabama*, 748 F.3d 1316, 1322 (11th Cir. 2014)

(quotation omitted)(emphasis in original).   Summary judgment is, therefore, due to be

GRANTED as to Towne and McCrane on the unlawful stop claim.

B. Unlawful Search Claims

1.   Bodily Integrity and Deliberate Indifference

The Defendants have moved for summary judgment as to the substantive due process and

10

deliberate indifference claims in Counts Two and Three.

Mann responds that he offers no opposition to this.   The court has reviewed the Defendants' Motion for Summary Judgment and the evidence cited in support of it as to these two claims, and finds no question of material fact which would preclude summary judgment.   The Motion for Summary Judgment is, therefore, due to be GRANTED as to the bodily integrity claim in Count Two and the deliberate indifference claim in Count Three.

### 2.   First Pat-Down Search

Mann contends that Town and McCrane had no constitutional basis upon which to conduct a frisk or pat-down search.

The Defendants argue that Towne and McCrane are entitled to qualified immunity as to Mann's unlawful search claim because they were acting within their discretionary authority and no constitutional right was violated in the pat-down search, and even if it were unconstitutional, the right is not so clearly-established as to give Towne and McCrane fair warning that they were violating Mann's constitutional rights.

An officer is justified in conducting a limited search for weapons once he has reasonably concluded that a person who was lawfully stopped might be armed and presently dangerous. *Terry*, 392 U.S. at 21–22.   A frisk is justified only by the law enforcement officer's reasonable belief that a detained individual is presently armed and that weapons must be removed for officer safety.   *See United States v. Bonds*, 829 F.2d 1072, 1074 (11th Cir. 1987).   Because drug activity is known to be linked to weapons and violence, an officer may have sufficient reason to believe a person suspected of drug activity might be armed and dangerous.   *See United States v. Hromada*, 49 F.3d 685, 689 (11th Cir.1995) ("Guns and violence go hand-in-hand with illegal drug

operations.").

In this case, there was a tip about the presence of narcotics.   In addition to the tip, when Mann was asked about narcotics being present in the car, Towne testified that Mann answered in a non-responsive way, replying that "there shouldn't be." (Doc. #19-2 at p.2).   Furthermore, Towne saw beer bottles and smelled alcohol in the car. (Doc. #19-2 at p.2).   *See United States v. Salter*, 255 F. App'x 355, 360 (11th Cir. 2007) (in evaluating the reasonableness of a pat-down search, the court considered that there was a perceptible odor of alcohol and open beer bottles).   This court concludes that "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger," *Terry*, 392 U.S. at 27, so the initial pat-down after the stop did not violate the constitution in this case.

### 3.   Second Pat-Down Search

Mann maintains that there was no constitutional basis even for the initial pat-down search, but even if there were such a basis, the second search conducted by McCrane violated Mann's rights.   Mann points out that no contraband or weapons were discovered during the initial pat-down search to justify a more intrusive search, but that McCrane undertook a second, and intrusive search.   At various points, Mann characterizes this second search as a "strip search."

The Defendants argue that there is no question of fact, and that the video evidence of the stop conclusively establishes that there was no so-called "strip search" of Mann.   The Defendants further state that Mann has not provided testimony evidence to establish his version of events. The Defendant's state that Mann's affidavit is not consistent with his deposition testimony, and that the affidavit is due to be stricken as inconsistent without explanation.   *See Van T. Junkins & Assoc., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656 (11th Cir. 1984).

12

The court agrees that much of Mann's deposition testimony is contradicted by the video evidence.   Mann testified in his deposition that he was forced to remove his hat, shirt, shorts, and underwear and stand naked along Highway 280.   (Doc. #29-1 at p. 68:14-73:20).   The video, however, does not support a finding that he had to remove all of his clothing and stand completely unclothed.   A court may not accept a nonmovant's version of facts that are "blatantly contradicted by the record, so that no reasonable jury could believe [them]."   *Scott v. Harris*, 550 U.S. 372, 380 (2007).   The record can include video evidence.   *Id.* at 381.   Therefore, summary judgment is due to be GRANTED to the extent that Mann claims that he was "strip searched" or made to stand naked on the side of the road.

Mann has presented a second theory of his unreasonable search claim, however, stating that he was searched while wearing his underwear.[3]   In his affidavit, Mann states that McCrane placed his hand inside Mann's boxer underwear while Mann is wearing his underwear.   In his brief, Mann summarizes the facts as demonstrated in the dash board video recording as follows: Mann was frisked by Towne, Mann was taken to the opposite side of the car by McCrane, McCrane is wearing a latex glove, McCrane causes Mann to remove his shorts, and McCrane searched the inside of Mann's boxer underwear.

It is undisputed, and supported by video evidence, that Mann dropped a pair of shorts, and an officer conducted a pat-down of Mann.   McCrane has stated in an affidavit that he noticed

---

[3] Although they have asked the court not to consider certain evidence, the Defendants have not argued that this unreasonable search claim is not before the court. It is the Defendants who initially set out the facts of McCrane's requiring Mann to drop his shorts and his pat-down of the shorts underneath.   The Defendants characterized the proposed Amended Complaint as containing a claim for lack of probable cause to conduct a traffic stop, detention, and search of the Plaintiff and the vehicle. (Doc. #24 at p.2).   The court concludes, therefore, that the Amended Complaint fairly includes an unreasonable search based on a search after removal of Mann's shorts.

Mann was wearing two pairs of shorts and a pair of underwear.   (Doc. #19-3).   According to

McCrane, he asked Mann to drop the first pair of shorts so that he could search the second pair.

(Doc. #19-3 at p.2).   Mann testified in his deposition, however, that he was only wearing white

painter shorts and was not wearing a second pair of shorts. (Doc. #29-1 at p.69:9-70:1).   He says

that he had on shorts and a pair of boxer underwear underneath those shorts. (Doc. #29-1 at

p.69:18-21).

The video evidence is not conclusive on this point.   In one recording, Mann is visible

when he lowers a pair of white shorts to the ground. (Doc. #19-5 at 3:18).   He continues to wear a

pair of gray shorts, and an officer touches those shorts and appears to shake them.   It is not clear

from the video evidence whether the gray shorts were covering underwear or were the only layer

beneath the white shorts.

Because Mann has denied in his deposition that he had on two pairs of shorts, and the video

evidence does not blatantly contradict Mann's testimony so that no reasonable jury could believe

it, it is in dispute as to whether Mann had two pairs of shorts on, or one pair of shorts and

underwear.[4]

The scope of *Terry* frisk is "a carefully limited search of the outer clothing" in an attempt to

discover weapons.   392 U.S. at 30.   Courts have found that a more extensive pat down is

---

[4]  It is also unclear from the video evidence whether McCrane's hand was ever inside of the gray
shorts.   The video does not squarely contradict Mann's affidavit statement that McCrane's hand
was inside his underwear.   Even without evidence that McCrane searched inside Mann's
underwear, however, the court concludes that the second pat-down was not consistent with *Terry*,
for the reasons discussed below.   Therefore, for purposes of deciding the summary judgment
motion, the court need not consider the affidavit statement to the effect that McCrane put his hands
inside Mann's underwear, or, consequently, the Defendants' argument that the affidavit should be
stricken under *Van T. Junkins,* 735 F.2d 657.   If the Defendants contend that such evidence should
be excluded from trial, evidentiary issues can be raised before trial in a timely-filed motion in
limine.

reasonable in some circumstances when a defendant is wearing extra clothes.[5]  *See, e.g.*, *United States v. Armstrong*, No. CR213–008, 2013 WL 3778410, at *3 (S.D. Ga. July 17, 2013) (finding that shaking of defendant's shorts to continue searching for a weapon after an initial pat-down was reasonable and did not exceed the scope of the *Terry* frisk where a person was wearing two pair of shorts under another pair of shorts).   In this case, however, a second pat down, including the removal of a pair of shorts to search clothing underneath, where it is disputed as to whether Mann had on multiple layers of outer clothing, goes beyond the scope of a *Terry* frisk.   *See United States v. Smith*, 694 F. Supp. 2d 1242, 1257-58 (M.D. Ala. 2009) (although finding that evidence was not due to be suppressed for other reasons, expressing the opinion that subjecting a person to two separate pat-downs including a removal of his shoes was a search which went beyond a *Terry* frisk for officer safety), *aff'd* 481 F. App'x 834 (11th Cir. 2014).

The court concludes that while much of Mann's testimony in his deposition of the second search is contradicted by the video evidence, the undisputed evidence that McCrane conducted a second frisk after the initial pat-down, along with the disputed evidence as to whether Mann was wearing more than a single layer of outer clothing, leads this court to conclude that a question of fact exists as to the constitutional violation.   In other words, while Mann's testimony is largely contradicted by evidence, his testimony that he was wearing only one pair of pants is not clearly contradicted, and, accepting his version of the facts, the video evidence of the second search demonstrates that a search which exceeded the scope of *Terry* occurred.

The law, as set out above, was clearly established that a *Terry* stop only allows for a

_____

[5] The court notes that the Defendants have treated the search of Mann as one event.   Whether viewed as two separate pat-downs, or whether viewed as a continuation of the first pat-down, McCrane's pat-down goes beyond the scope of what is permissible under *Terry* as a frisk for officer safety.

pat-down search of the outer clothing for weapons of lawfully-stopped individuals who might be

armed and presently dangerous.   The evidence is undisputed that no weapons were found during

the initial pat-down of Mann, and that McCrane conducted a second-pat down after requiring

Mann to drop his shorts.   Because the evidence is in dispute as to whether there were multiple

layers of outer clothing, qualified immunity is due to be DENIED to Towne and McCrane at this

point in the proceedings.[6]

### 4.   Search of Vehicle

Mann alleges in the Amended Complaint that the Defendants violated his rights by

conducting a search of Mann and his vehicle. In their opposition to the Motion to Amend, which

the court has construed as a supplement to the Motion for Summary Judgment, the Defendants

contend that there was probable cause to search the vehicle because the search was conducted after

drugs were found on one of the occupants of the vehicle.   The Defendants also point out that

Mann testified in his deposition that McCrane did not search his vehicle, and that he did not see

Towne search the vehicle, and that he saw the task force search his vehicle. (Doc. #24-2 at

p.102:1-103:23).   Mann states in his deposition that McCrane and Towne did not do anything that

he objected to during the search of the car.   (Doc. #24-2 at p.210 4-13).

In his brief in response to the supplement to the Motion for Summary Judgment, Mann

mentions in passing the search of the vehicle as being part of his claim, but does not present any

evidence in opposition to the evidence presented by the Defendants.   Therefore, in the light of the

---

[6] The parties have not distinguished between the two officers' actions for purpose of qualified
immunity under the Fourth Amendment, seemingly because Towne said he did a "quick pat" and
then asked McCrane to "take Mr. Mann" because they had other occupants in the car.   (Doc.
#29-2 at p.17:11-17).   Because the Defendants have not separately analyzed the liability of these
Defendants, the court has not either.

Defendants having argued that there is no evidence that McCrane or Towne illegally searched the vehicle, and pointing to affirmative evidence in support of their argument, and Mann having failed to create a question of fact as to this claim, the Motion for Summary Judgment is due to be GRANTED as to the search of the vehicle claim.

State Law Claims

Mann brings claims in Counts Four and Five of the Amended Complaint which allege that Towne and McCrane are liable for negligence and carried out duties in a neglectful, unskillful, and/or careless manner by conducting an overtly intrusive strip-search of Mann, and that the City of Dadeville can be held liable for that neglect, unskillfulness, and carelessness.

The Defendants urge the court to decline to exercise supplemental jurisdiction over the state law claims.   The Defendants also move for summary judgment on the state law claims against Towne and McCrane on the basis of Ala. Code § 6-5-338(a) immunity, and against the City of Dadeville on the basis that the City enjoys immunity when its officers are found to be immune.

Under Ala. Code §6-5-338(a), police officers have immunity from tort liability arising out of conduct in performance of any discretionary function within the line and scope of their law enforcement duties.   State-agent immunity derives from Alabama's constitution and shields state employees from civil liability unless they act "willfully, maliciously, fraudulently, in bad faith, beyond [their] authority, or under a mistaken interpretation of the law," or if the Constitution or laws of the United States or Alabama require otherwise. *Ex parte Cranman*, 792 So.2d 392, 405 (Ala. 2000).   The *Cranman* test for State-agent immunity also determines whether a police officer is entitled to discretionary-function immunity under § 6–5–338(a). *Ex parte City of Tuskegee*, 932 So.2d 895, 904 (Ala.2005).

17

Mann responds that the lack of arguable probable cause, the fact that Towne and McCrane did not follow the City of Dadeville's strip-search policy, and the fact that they stopped Mann outside of the city limits of the City of Dadeville means that Towne and McCrane are not entitled to immunity.

State-agent immunity is subject to a burden-shifting framework. *See Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 741 (11th Cir.2010). The police officer bears the burden of demonstrating that the plaintiff's claims arise from a function that would give rise to immunity. *Id.* Then, the burden shifts to the plaintiff to show that the police officer "acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority." *Id.* (citation omitted).

Mann is correct that a lack of arguable probable cause can mean that officers are not entitled to State-agent or discretionary function immunity under Alabama law. *See Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 741 (11th Cir. 2010) (stating that the "Alabama Supreme Court has applied the same 'arguable probable cause' standard utilized in this Court's federal qualified immunity cases for determining whether a city police officer receives state-agent immunity for his role in an arrest."); *Harris v. City Of Prattville*, 2:07cv349-WHA, 2008 WL 2704684, at *16 (M.D. Ala. July 7, 2008) (finding no arguable probable cause to arrest plaintiff in her home, so that the officer is not entitled to discretionary or State-agent immunity).

Although the standard at issue in this case is arguable reasonable suspicion, not probable cause, it would seem that the same reasoning would apply. *See Kleinshnitz v. Phares*, No. 1:13cv209-MEF, 2013 WL 5797621, at *6 (M.D. Ala. Oct. 28, 2013)(interpreting *Ex parte Duvall*, 782 So.2d 244, 248 (Ala. 2000) as applying State-agent immunity to officers with a reasonable suspicion sufficient to conduct a *Terry* stop); *Johnson v. Birmingham*, No.

18

2:10cv2836-VEH, 2012 WL 3775867, at *11 (N.D. Ala. Aug. 24, 2012) (granting summary judgment in favor of a plaintiff on a state law claim where officers lacked arguable reasonable suspicion for a *Terry* stop).   Therefore, the questions of fact precluding summary judgment as to the federal search claim also preclude summary judgment on the basis of immunity to the state law negligence claim arising from the second search, or second part of the search, of Mann, which went beyond the scope of a permissible *Terry* pat-down search for officer safety.[7]

The City of Dadeville claims immunity pursuant to Ala. Code §6-5-338(b).   If the officers are not entitled to immunity under Ala. Code §6-5-338(a), then the City of Dadeville cannot claim the immunity of its officers.   *See City of Crossville v. Haynes*, 925 So. 2d 944, 955 (Ala. 2005).

In addition to the discretionary function or State-agent immunity grounds for summary judgment, the Defendants also argue that the City of Dadeville cannot be held liable for intentional acts, citing Alabama Code §11-47-190.   While it is the case that Ala. Code §11-47-190 only allows for liability on the part of a city for "injury or wrong . . . done or suffered through the neglect, carelessness or unskillfulness of some agent," and although the Defendants argue that Mann is claiming intentional acts, the state law claim as pled in the Amended Complaint is one for negligence.   If Mann prevails on a negligence claim against the officers, a jury can also find against the City of Dadeville for their actions.

## V. CONCLUSION

As discussed above, there was a legal stop in this case, but questions of fact, viewed in a light most favorable to the non-movant, would allow a reasonable jury to conclude that a resulting pat-down search exceeded constitutional bounds, and those bounds are

---

[7] In light of this, the court need not address Mann's other bases for denying summary judgment as to State-agent or discretionary function immunity.

clearly-established law.   Accordingly, it is hereby ORDERED as follows:

1.   The Motion for Summary Judgment (Doc. #19) is GRANTED and Judgment is entered in favor of the Defendants and against Randall Mann as to the unlawful stop, initial pat-down, and strip-search claims in Count One, the bodily integrity claim in Count Two, and the deliberate indifference claim in Count Three, and the "strip search" negligence claims in Counts Four and Five of the Amended Complaint.

2.   The Motion for Summary judgment (Doc. #19) is DENIED as to an unreasonable search claim in Count One of the Amended Complaint based on the disputed facts surrounding the second pat-down of Mann after removal of a pair of shorts, and a negligence claim against Towne, McCrane, and the City of Dadeville in Counts Four and Five based on the same facts.

The case will proceed to trial against Towne and McCrane for a Fourth Amendment claim of an unlawful pat-down search and negligence in regard to that search, and against the City of Dadeville for Towne and McCrane's negligence in conducting the unlawful pat-down search.

Done this 24th day of July, 2014.

/s/ W. Harold Albritton
W.   HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE

20